# UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF LOUISIANA

**JAMES CONLEY**

**CIVIL ACTION**

**VERSUS**

**NO. 16-9967**

**CAROLYN W. COLVIN, ACTING COMMISSIONER**
**OF THE SOCIAL SECURITY ADMINISTRATION**

**SECTION: "G"(2)**

## ORDER AND REASONS

Before the Court are Plaintiff James Conley's ("Plaintiff") objections[1] to the February 2, 2017 "Findings and Recommendation" of the United States Magistrate Judge assigned to the case.[2] Plaintiff filed this action pursuant to 42 U.S.C. § 405(g) for review of the final decision of Defendant, the Acting Commissioner of the Social Security Administration (the "Commissioner" or "Defendant"), denying his claim for disability insurance benefits ("DBI") and supplemental security income ("SSI") under Titles II and XVI of the Social Security Act (the "Act").[3] The Magistrate Judge recommended that the Administrative Law Judge's ("ALJ") decision denying Plaintiff's application for benefits be affirmed.[4] Having considered Plaintiff's objections, the Magistrate Judge's Findings and Recommendation, the record, and the applicable law, for the following reasons the Court will overrule Plaintiff's objections, adopt the Magistrate Judge's Findings and Recommendation, and affirm the ALJ's decision.

---

[1] Rec. Doc. 24.

[2] Rec. Doc. 23.

[3] Rec. Doc. 1.

[4] Rec. Doc. 23 at 32–33.

# I. Background

## A.    *Procedural History*

When Plaintiff filed his original application for DBI and SSI on December 19, 2013, Plaintiff alleged that his disability began on January 1, 2013, due to residual effects of a stroke, memory loss, anxiety, high blood pressure, and hearing loss in his left ear.[5] In this appeal, Plaintiff argues that his hypertension, anxiety and mood disorder, urinary frequency, and obstructive sleep apnea are severe impairments, and that the combined effects of his multiple medical impairments render him disabled.[6]

After Plaintiff's claims were denied at the agency level, Plaintiff requested a hearing before an ALJ, which was held on November 13, 2014.[7] Plaintiff and a vocational expert participated in the hearing.[8] On February 27, 2015, the ALJ issued a decision denying Plaintiff's application for benefits.[9] The ALJ analyzed Plaintiff's claim pursuant to the five-step sequential evaluation process.[10] At step one, the ALJ concluded that Plaintiff had not engaged in substantial gainful

---

[5] Adm. Rec. at 135–150, 173.

[6] *See* Rec. Doc. 21 at 7.

[7] Adm. Rec. at 35–65.

[8] *Id*.

[9] Adm. Rec. at 11–20.

[10] The five-step analysis requires consideration of the following:

First, if the claimant is currently engaged in substantial gainful employment, he or she is found not disabled. 20 C.F.R. §§ 404.1520(b), 416.920(b).

Second, if it is determined that, although the claimant is not engaged in substantial employment, he or she has no severe mental or physical impairment which would limit the ability to perform basic work-related functions, the claimant is found not disabled. *Id*. §§ 404.1520(c), 416.920(c).

Third, if an individual's impairment has lasted or can be expected to last for a continuous period of twelve months and is either included in a list of serious impairments in the regulations or is medically equivalent to a listed

activity since January 1, 2013, the alleged onset date.[11] At step two, the ALJ concluded that Plaintiff has the following severe impairments: "cardiac dysrhythmia and syncopal episodes."[12] The ALJ also concluded that Plaintiff's benign prostatic hypertrophy and anxiety were non-severe impairments.[13] At step three, the ALJ found that Plaintiff did not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments under the regulations.[14]

At step four, the ALJ found that Plaintiff had the residual functional capacity ("RFC") to perform light work with the following restrictions: (1) Plaintiff can occasionally climb ramps and stairs; (2) he can never climb ladders, ropes, and scaffolds; (3) he must avoid all exposure to workplace hazards such as moving machinery and heights; (4) he can occasionally reach in all directions; and (5) once per quarter, on an unpredictable basis, he must miss one day of work.[15] At

impairment, he or she is considered disabled without consideration of vocational evidence. *Id.* §§ 404.1520(d), 416.920(d).

Fourth, if a determination of disabled or not disabled cannot be made by these steps and the claimant has a severe impairment, the claimant's residual functional capacity and its effect on the claimant's past relevant work are evaluated. If the impairment does not prohibit the claimant from returning to his or her former employment, the claimant is not disabled. *Id.* §§ 404.1520(e), 416.920(e).

Fifth, if it is determined that the claimant cannot return to his or her former employment, then the claimant's age, education, and work experience are considered to see whether he or she can meet the physical and mental demands of a significant number of jobs in the national economy. If the claimant cannot meet the demands, he or she will be found disabled. *Id.* §§ 404.1520(f)(1), 416.920(f)(1). To assist the Commissioner at this stage, the regulations provide certain tables that reflect major functional and vocational patterns. When the findings made with respect to a claimant's vocational factors and residual functional capacity coincide, the rules direct a determination of disabled or not disabled. *Id.* § 404, Subpt. P, App. 2, §§ 200.00-204.00, 416.969.

[11] Adm. Rec. at 13.

[12] *Id.*

[13] *Id.* at 14.

[14] *Id.* at 15.

[15] *Id.*

step four, the ALJ also found that Plaintiff was capable of performing his past relevant work as a probation and parole officer.[16] Therefore, the ALJ determined that Plaintiff was not under a disability from January 1, 2013, through the date of the decision.[17]

Plaintiff requested review by the Appeals Council.[18] The ALJ's decision became the final decision of the Commissioner for purposes of this Court's review after the Appeals Council denied review on April 15, 2016.[19] On June 14, 2016, Plaintiff filed a complaint seeking judicial review pursuant to Section 405(g) of the Act.[20] This matter was referred to a United States Magistrate Judge pursuant to 28 U.S.C. § 636(b) and Local Rule 73.2(B). On September 19, 2016, the Commissioner answered the complaint.[21]

On October 21, 2016, Plaintiff filed a brief arguing that the ALJ erred when he: (1) failed to find that Plaintiff's hypertension, anxiety and mood disorder, urinary frequency, and obstructive sleep apnea were severe impairments; (2) failed to consider the combined effects of Plaintiff's multiple impairments; (3) failed to follow the proper legal standards in determining how much weight to accord the opinions of Plaintiff's treating physicians; and (4) failed to properly consider evidence indicating that Plaintiff did not have the RFC to sustain any significant gainful

---

[16] *Id*. at 19.

[17] *Id*. at 20.

[18] *Id*. at 7.

[19] *Id*. at 1–6.

[20] Rec. Doc. 1.

[21] Rec. Doc. 18.

employment.[22] On November 21, 2016, the Commissioner filed a brief arguing that substantial evidence supports the ALJ's determination.[23]

**B.      *The Magistrate Judge's Findings and Recommendation***

The Magistrate Judge issued his Findings and Recommendation on February 2, 2017.[24] First, the Magistrate Judge addressed Plaintiff's argument that the ALJ erred in finding that his anxiety and mood disorder, urinary frequency, and obstructive sleep apnea were not severe.[25] As an initial matter, the Magistrate Judge noted that Plaintiff listed the failure to find that hypertension was a severe impairment as an assignment of error, but did not provide any briefing on the issue.[26] Therefore, the Magistrate Judge found any argument that Plaintiff's hypertension was a severe impairment to be abandoned.[27] Turning to the other impairments, the Magistrate Judge noted that the ALJ determined the medical severity of Plaintiff's impairments at step two of the evaluation process, but then proceeded beyond step two to find that Plaintiff was not disabled.[28] Because the ALJ considered all of the evidence concerning Plaintiff's medically determinable impairments in finding that Plaintiff could perform light work with restrictions, the Magistrate Judge concluded

---

[22] Rec. Doc. 21.

[23] Rec. Doc. 22.

[24] Rec. Doc. 23.

[25] *Id*. at 13.

[26] *Id*. at 2, n.1.

[27] *Id*.

[28] *Id*. at 14.

that the ALJ's determination that Plaintiff's anxiety and mood disorder, urinary frequency, and obstructive sleep apnea were not severe was irrelevant and non-prejudicial to Plaintiff.[29]

Moreover, the Magistrate Judge found that substantial evidence supported the ALJ's determination that these conditions were not severe, noting that Plaintiff relied primarily on his own testimony and self-reported symptoms which were insufficient to establish a severe medical impairment.[30] The Magistrate Judge found substantial medical evidence to support the ALJ's finding that Plaintiff's adjustment disorder was not severe, because Plaintiff had no limitations in his activities of daily living, only mild limitations in social functioning and in concentration, persistence, and pace, and no episodes of decompensation.[31] The Magistrate Judge also found that the medical evidence did not reflect that Plaintiff's urinary frequency and urgency symptoms were as severe as Plaintiff testified.[32] As for Plaintiff's sleep apnea, the Magistrate Judge determined that the medical evidence did not indicate that Plaintiff was fully complying with his sleep apnea treatment regimen, and Plaintiff did not cite any evidence of any functional limitations caused by his sleep apnea.[33] Accordingly, the Magistrate Judge concluded that the ALJ's finding that

---

[29] *Id*. at 15–16.

[30] *Id*. at 16 (citing *Charles v. Colvin*, 628 F. App'x 290, 291 & n.3 (5th Cir. 2016); *Quijas v. Astrue*, 298 F. App'x 391, 393 (5th Cir. 2008); *Chambliss v. Massanari*, 269 F.3d 520, 522 (5th Cir. 2001)); *Harper v. Sullivan*, 887 F.2d 92, 96 (5th Cir. 1989)).

[31] *Id*. at 17.

[32] *Id*. at 19.

[33] *Id*. at 21.

Plaintiff's anxiety and mood disorder, urinary frequency, and obstructive sleep apnea were not severe was supported by substantial evidence.[34]

Second, the Magistrate Judge addressed Plaintiff's contention that the ALJ failed to consider the combined effects of Plaintiff's impairments.[35] The Magistrate Judge found that Plaintiff's list of subjective complaints and diagnoses did not establish any combined effects that the ALJ failed to address.[36] Accordingly, the Magistrate Judge determined that Plaintiff's assignment of error lacked merit.[37]

Third, the Magistrate Judge addressed Plaintiff's argument that the ALJ failed to follow proper legal standards in determining how much weight to give to the opinions of his treating psychiatrist's February 18, 2014 letter.[38] The Magistrate Judge noted that the ALJ considered the letter and concluded that it was not supported by the treatment record or by the consultative psychiatrist's opinion.[39] Therefore, the Magistrate Judge found that this assignment of error lacked merit, because substantial evidence supported the ALJ's decision to disregard the treating psychiatrist's conclusion.[40]

---

[34] *Id.*

[35] *Id.*

[36] *Id.* at 22.

[37] *Id.* at 23.

[38] *Id.*

[39] *Id.*

[40] *Id.* at 25.

Finally, the Magistrate Judge addressed Plaintiff's argument that the ALJ failed to consider all of the evidence in determining Plaintiff's RFC to sustain gainful employment.[41] The Magistrate Judge reviewed the medical evidence of record.[42] The Magistrate Judge noted that the ALJ had acknowledged that Plaintiff's medically determinable impairments "could reasonably be expected to cause some of the alleged symptoms, but found that [Plaintiff's] statements concerning the intensity, persistence and limiting effects of his symptoms were not entirely credible."[43] The Magistrate Judge determined that the ALJ's credibility finding was supported by substantial evidence.[44] Moreover, the Magistrate Judge noted that the ALJ posed a hypothetical question to the vocational expert that accounted for Plaintiff's age, education, work experience and physical limitations that the ALJ found credible, and the vocational expert testified that such a person could perform Plaintiff's past relevant work as a probation and parole officer.[45] The Magistrate Judge also noted that Plaintiff's counsel questioned the vocational expert and asked her about the effects of Plaintiff's alleged additional impairments that would cause him to be absent from the workplace excessively, and the vocational expert testified that such a person could not perform any jobs.[46] However, because substantial evidence supported the ALJ's finding that the record did not support such limitations, the Magistrate Judge concluded that the ALJ was not required to include such

---

[41] *Id.*

[42] *Id.* at 26–29.

[43] *Id.* at 30.

[44] *Id.* at 31.

[45] *Id.*

[46] *Id.* at 32.

limitations in his hypothetical question to the vocational expert.[47] Accordingly, the Magistrate Judge determined that Plaintiff's assignment of error lacked merit.[48]

## II. Objections

### A.    *Plaintiff's Objections*

Plaintiff timely filed objections to the Magistrate Judge's Findings and Recommendation on February 16, 2017.[49] Plaintiff raises the following objections to the Magistrate Judge's Findings and Recommendation: (1) Plaintiff's hypertension, anxiety and mood disorder, and obstructive sleep apnea are severe impairments when medical evidence and testimony are duly considered in context of how the Fifth Circuit defines a severe impairment;[50] (2) the failure to deem Plaintiff's hypertension, anxiety and mood disorder, and obstructive sleep apnea as severe "are both relevant and prejudicial to proper consideration of how combined effects of multiple impairments diminish his residual functional capacity;" (3) the opinion of the consulting psychiatrist, Sandra Durdin, Ph.D., does not deserve as much weight as the opinions of his treating physicians; and (4) "[t]here has been insufficient consideration of the emotional stress and anxiety inherent in work as a probation officer."[51]

---

[47] *Id.*

[48] *Id.*

[49] Rec. Doc.  24.

[50] Plaintiff does not object to the Magistrate Judge's finding that substantial evidence supported the ALJ's determination that Plaintiff's urinary frequency condition was not severe. *Id.* at 1–2.

[51] *Id.* at 1–2.

First, Plaintiff asserts it was wrong to conclude that his hypertension, anxiety and mood disorder, and obstructive sleep apnea were not severe impairments.[52] Plaintiff contends that under Fifth Circuit precedent "[a]n impairment is not severe 'only if it is a slight abnormality [having] such a minimal effect on the individual that it would not be expected to interfere with the individual's ability to work, irrespective of age, education or work experience.'"[53] Plaintiff argues that the medical evidence and his testimony establish that his hypertension, anxiety and mood disorder, and obstructive sleep apnea have much more than a "minimal effect."[54] Therefore, Plaintiff avers that there is "substantial evidence" that these impairments are severe.[55]

Second, Plaintiff contends that the failure to deem his hypertension, anxiety and mood disorder, and obstructive sleep apnea as severe is relevant and prejudicial to proper consideration of how the combined effects of his multiple impairments diminished his RFC.[56] Plaintiff asserts that it was an "over-simplification" for the Magistrate Judge to find that Plaintiff was not prejudiced by the ALJ's determination, because "the finding at step 5 would have been different if the ALJ had deemed these other impairments to also be severe."[57] Specifically, Plaintiff argues that a finding that these impairments are severe "should have forced the ALJ to put proper focus on how these additional impairments combined with others to negatively affect residual functional

---

[52] *Id.* at 2.

[53] *Id.* (quoting *Herrera v. Comm'r of Soc.Sec.*, 406 F. App'x 899, 902 n.1 (5th Cir. 2010) (quoting *Loza v. Apfel*, 219 F.3d 378, 391 (5th Cir. 2000)).

[54] *Id.*

[55] *Id.* at 4.

[56] *Id.* at 5.

[57] *Id.* at 6.

capacity."[58] Plaintiff notes that his recurring syncopal episodes resulted in a restriction against driving, which he contends alone should have been considered a severe restriction on his ability to sustain employment as a probation officer.[59] He also contends that the Magistrate Judge and the ALJ failed to consider evidence of prescription medicines.[60] He avers that "[i]t seems more than relevant and prejudicial to conclude someone who requires multiple medicines to deal with depression, anxiety, muscular pain, high blood pressure and stroke would have nothing more than minimally diminished abilities to deal with criminals on probation."[61] Therefore, Plaintiff "objects that there is a lack of substantial evidence that claimant could overcome the combined effects of multiple impairments to resume full time employment as a probation and parole officer."[62]

Third, Plaintiff asserts that the ALJ did not follow proper legal standards in determining how much weight to accord the opinions of his treating physicians.[63] Plaintiff contends that the ALJ erred in giving so much weight to the opinion of the consultative psychologist, Dr. Durdin.[64] He argues that the opinions of treating physicians should be accorded considerable weight,[65] and the ALJ may only give less weight to a treating physician's opinion when "there is good cause

---

[58] *Id.*

[59] *Id.*

[60] *Id.* at 7.

[61] *Id.*

[62] *Id.*

[63] *Id.*

[64] *Id.* at 8.

[65] *Id.* (citing *Scott v. Heckler*, 770 F.2d 482, 485 (5th Cir.1985)).

shown to the contrary."[66] Plaintiff notes that he received treatment from Drs. Jackson and Russell for several years, and they were consistent in their diagnosis of adjustment disorder.[67] Plaintiff also notes that Dr. Jackson's February 18, 2014 letter lists a number of ways in which Plaintiff's psychiatric condition negatively affects Plaintiff and concludes that "[t]his makes it very difficult for patient to properly interact with others in a work situation."[68] Therefore, Plaintiff contends that the ALJ erred in choosing "to essentially ignore the reports and conclusions of Dr. Jackson."[69]

Finally, Plaintiff argues that there is not substantial evidence to support the ALJ's determination that he has the RFC to sustain full-time work as a probation officer.[70] Plaintiff notes that the vocational expert only testified as to a probation officer's physical class, saying nothing about the emotional or psychological weight of the job.[71] Plaintiff asserts that "an old man with heart problems, seizure disorder, anxiety and depression, sleep disorder, and hypertension should [not] be put in a room with drug dealers, petty criminals, domestic abusers, and other various types of mistaken behaviorists who require the services of a probation or parole officer."[72] Plaintiff "strenuously maintains that there is substantial evidence to support his allegations that he would be off task too much to maintain significant gainful employment," and "[c]onversely, he maintains

---

[66] *Id.* (citing *Warncke v. Harris*, 619 F.2d 412, 417 (5th Cir. 1980)).

[67] *Id.* at 8–9.

[68] *Id.* at 10 (citing Adm. Rec. at 309).

[69] *Id.* at 10–11.

[70] *Id.* at 10.

[71] *Id.* at 11.

[72] *Id.*

there is not substantial evidence to support a conclusion that he has the residual functional capacity to sustain full-time employment."[73]

**B.    The Commissioner's Response**

The Commissioner did not file a brief in opposition to Plaintiff's objections despite receiving electronic notice of the filing posted on February 16, 2017.

### III. Standard of Review

**A.    Review of the Magistrate Judge's Findings and Recommendation**

In accordance with Local Rule 73.2, this case was referred to a Magistrate Judge to provide a Report and Recommendation. A district judge "may accept, reject, or modify the recommended disposition" of a magistrate judge on a dispositive matter.[74]  The district judge must "determine *de novo* any part of the [Report and Recommendation] that has been properly objected to."[75] A district court's review is limited to plain error of parts of the report which are not properly objected to.[76]

**B.    Standard of Review of Commissioner's Final Decision on SSI and DIB Benefits**

Under 42 U.S.C. § 405(g) the district court has the power to enter "a judgment affirming, modifying, or reversing the decision of the Commissioner of Social Security, with or without remanding the cause for a rehearing."[77] Appellate review of the Commissioner's denial of SSI and

---

[73] *Id.*

[74] Fed. R. Civ. P. 72(b)(3); *see also* 28 U.S.C. § 636(b)(1).

[75] *Id.*

[76] *See Douglass v. United Servs. Auto. Ass'n*, 79 F.3d 1415, 1428–29 (5th Cir. 1996) (en banc), *superseded by statute on other grounds*, 28 U.S.C. § 636(b)(1) (extending time to file objections from ten to fourteen days).

[77] 42 U.S.C. § 405(g).

DIB benefits[78] is limited to determining whether the decision is supported by substantial evidence in the record and whether the proper legal standards were used in evaluating the evidence.[79] "Substantial evidence is more than a scintilla, less than a preponderance, and is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion."[80] The Court must review the whole record to determine if such evidence exists.[81] However, the district court cannot "reweigh the evidence in the record, try the issues *de novo*, or substitute its judgment for the Commissioner's."[82] The ALJ is entitled to make any finding that is supported by substantial evidence, regardless of whether other conclusions are also permissible.[83] A court "weigh[s] four elements of proof when determining whether there is substantial evidence of disability: (1) objective medical facts; (2) diagnoses and opinions of treating and examining physicians; (3) the claimant's subjective evidence of pain and disability; and (4) his age, education, and work history."[84]

---

[78] The relevant law and regulations governing a claim for DIB are identical to those governing a claim for SSI. *Greenspan v. Shalala*, 38 F.3d 232, 236 (5th Cir. 1994); *Hollis v. Bowen*, 837 F.2d 1378, 1382 n. 3 (5th Cir. 1988).

[79] *Perez v. Barnhart*, 415 F.3d 457, 461 (5th Cir. 2005); *Waters v. Barnhart*, 276 F.3d 716, 716 (5th Cir. 2002); *Loza v. Apfel*, 219 F.3d 378, 390 (5th Cir. 2000); *Villa v. Sullivan*, 895 F.2d 1019, 1021 (5th Cir. 1990).

[80] *Richardson v. Perales*, 402 U.S. 389, 401 (1971); *Perez*, 415 F.3d at 461; *Loza*, 219 F.3d at 393; *Villa*, 895 F.2d at 1021–22 (quoting *Hames v. Heckler*, 707 F.2d 162, 164 (5th Cir. 1983); *Randall v. Sullivan*, 956 F.2d 105, 109 (5th Cir. 1992)).

[81] *Singletary v. Bowen*, 798 F.2d 818, 822–23 (5th Cir. 1986).

[82] *Newton v. Apfel*, 209 F.3d 448, 452 (5th Cir. 2000).

[83] *See Arkansas v. Oklahoma*, 503 U.S. 91 (1992).

[84] *Martinez v. Chater*, 64 F.3d 172, 174 (5th Cir. 1995).

## IV. Law and Analysis

### A.    *Applicable Law to Qualification for SSI and DIB Benefits*

To be considered disabled, a claimant must show that he is unable "to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months."[85] The Commissioner has promulgated regulations that provide procedures for evaluating a claim and determining disability.[86] The regulations include a five-step evaluation process for determining whether an impairment constitutes a disability, and the five-step inquiry terminates if the Commissioner finds at any step that the claimant is or is not disabled.[87] The claimant has the burden of proof under the first four parts of the inquiry, and if he successfully carries this burden, the burden shifts to the Commissioner at step five to show that the claimant is capable of engaging in alternative substantial gainful employment, which is available in the national economy.[88]

In the instant case, the ALJ concluded that Plaintiff has the following severe impairments: "cardiac dysrhythmia and syncopal episodes."[89] The ALJ also concluded that Plaintiff's benign prostatic hypertrophy and anxiety were non-severe impairments.[90] The ALJ found that Plaintiff

---

[85] 42 U.S.C. § 423(d)(1)(A).

[86] 20 C.F.R. §§ 404.1501 to 404.1599 & Apps., §§ 416.901 to 416.998 (2008).

[87] *Id.* §§ 404.1520, 416.920; *Perez*, 415 F.3d at 461.

[88] *Perez*, 415 F.3d at 461; *Newton*, 209 F.3d at 453.

[89] Adm. Rec. at 13.

[90] *Id.* at 14.

did not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments under the regulations.[91] The ALJ found that Plaintiff had the residual functional capacity ("RFC") to perform light work with the following restrictions: (1) Plaintiff can occasionally climb ramps and stairs; (2) he can never climb ladders, ropes, and scaffolds; (3) he must avoid all exposure to workplace hazards such as moving machinery and heights; (4) he can occasionally reach in all directions; and (5) once per quarter, on an unpredictable basis, he must miss one day of work.[92] The ALJ also found that Plaintiff was capable of performing his past relevant work as a probation and parole officer.[93] Therefore, the ALJ determined that Plaintiff was not under a disability from January 1, 2013, through the date of the ALJ's decision.[94] The Court may disturb that finding only if the ALJ lacked "substantial evidence" to support it.[95]

**B.** **Whether the ALJ's Determination that Plaintiff's Urinary Frequency, Anxiety and Mood Disorder, Obstructive Sleep Apnea, and Hypertension were not Severe was Supported by Substantial Evidence**

The Magistrate Judge found the ALJ's decision that Plaintiff's anxiety and mood disorder, urinary frequency, and obstructive sleep apnea were not severe was based on substantial evidence.[96] The Magistrate Judge noted that Plaintiff listed the failure to find that hypertension

---

[91] *Id.* at 15.

[92] *Id.*

[93] *Id.* at 19.

[94] *Id.* at 20.

[95] *See Perez*, 415 F.3d at 461

[96] Rec. Doc. 23 at 21.

was a severe impairment as an assignment of error, but did not provide any briefing on the issue.[97] Therefore, the Magistrate Judge found any argument that Plaintiff's hypertension was a severe impairment to be abandoned.[98]

"A non-severe impairment under the Social Security regulations is one that 'does not significantly limit [the claimant's] physical or mental ability to do basic work activities.'"[99] An impairment is "not severe only if it is a slight abnormality having such minimal effect on the individual that it would not be expected to interfere with the individual's ability to work, irrespective of age, education or work experience."[100]

As an initial matter, the Court notes that Plaintiff avers that there is "substantial evidence" in the record to support his assertion that these impairments are severe.[101] However, Plaintiff misstates the standard of review applicable here. This Court's review is limited to determining whether the ALJ's determination that these conditions were not severe is supported by substantial evidence,[102] not whether the substantial evidence could support the opposite conclusion. Therefore, with this standard of review in mind, the Court considers whether substantial evidence supports the ALJ's conclusion that Plaintiff's urinary frequency, anxiety and mood disorder, sleep apnea, and hypertension were not severe impairments.

---

[97] *Id.* at 2, n.1.

[98] *Id.*

[99] *Giles v. Astrue*, 433 F. App'x 241, 245–46 (5th Cir. 2011) (quoting 20 C.F.R. § 404.1521).

[100] *Loza v. Apfel*, 219 F.3d 378, 391 (5th Cir. 2000).

[101] Rec. Doc. 24 at 4.

[102] *Perez*, 415 F.3d at 461.

### 1. Urinary Frequency

Plaintiff does not object to the Magistrate Judge's finding that substantial evidence supported the ALJ's determination that Plaintiff's urinary frequency condition was not severe.[103] Specifically, the Magistrate Judge found that the medical evidence did not reflect that Plaintiff's urinary frequency and urgency symptoms were as severe as Plaintiff testified, and that Plaintiff cited no objective medical evidence that substantially supported his testimony.[104] Accordingly, reviewing for plain error and finding none, the Court adopts the Magistrate Judge's finding that substantial evidence supported the ALJ's determination that Plaintiff's urinary frequency condition was not severe.

### 2. Anxiety and Mood Disorder

Plaintiff objects to the Magistrate Judge's determination that substantial evidence supported the ALJ's finding that Plaintiff's anxiety and mood disorder was not a severe impairment.[105] Accordingly, the Court reviews this issue *de novo.*

In determining whether a claimant with a mental impairment meets a listed impairment, the Commissioner considers: (1) whether specified diagnostic criteria ("paragraph A" criteria) are met; and (2) whether specified functional restrictions are present ("paragraph B" criteria).[106] "The required level of severity . . . is met when the requirements in both subsections A and B are

---

[103] *See* Rec. Doc. 24.

[104] Rec. Doc. 23 at 19.

[105] Rec. Doc. 24 at 2.

[106] 20 C.F.R. § 404.1520a.

satisfied."[107] "Subsection B requires the claimant to show that his activities have been impaired in at least two of four areas."[108] These four areas are:

1.    Marked restriction in activities of daily living;

2.    Marked difficulties in maintaining social functioning;

3.    Deficiencies of concentration, persistence, or pace resulting in frequent failure to complete tasks in a timely manner (in work settings or elsewhere);

4.    Repeated episodes of deterioration or decompensation in work or work-like settings which cause the individual to withdraw from that situation or to experience exacerbation of signs and symptoms (which may include deterioration of adaptive behaviors).[109]

Even if a claimant's mental impairment does not meet the criteria specified in the listings, he must be found disabled if his condition "is equal to" a listed impairment.[110] In determining whether the claimant's combination of impairments equals a particular listing, the Commissioner must consider whether his "symptoms, signs, and laboratory findings are at least equal in severity to the listed criteria."[111]

In reaching his conclusion that Plaintiff's anxiety and mood disorder were not severe, the ALJ reviewed Plaintiff's hearing testimony and the medical evidence.[112] The ALJ found that Plaintiff's adjustment disorder was not severe, because Plaintiff had no limitations in his activities

---

[107] *Stephens v. Barnhart*, 174 F. App'x 232, 233 (5th Cir. 2006) (quoting *Boyd v. Apfel*, 239 F.3d 698, 703 n.8 (5th Cir. 2001)).

[108] *Id.*

[109] 20 C.F.R. § 404, Subpt. P., App. 1, § 12.04(B).

[110] 20 C.F.R. § 404.1520(d).

[111] 20 C.F.R. § 404.1529(d)(3).

[112] Adm. Rec. at 14–15.

of daily living, mild limitations in social functioning, mild limitations in concentration, persistence, and pace, and no episodes of decompensation.[113] The ALJ relied on a psychological consultative examination performed by Dr. Sandra Durdin on March 31, 2014.[114] The ALJ noted that Dr. Durdin assessed anxiety due to Plaintiff's medical condition, but also noted that Plaintiff did not have a severe mental disorder.[115] Moreover, Dr. Durdin found that Plaintiff's adaptive functioning was average and that he was able to complete all activities of daily living.[116] The ALJ also cited to treatment notes from the VA Medical Center, which the ALJ found showed that Plaintiff's "mood was depressed . . . due to his medical problems and situational problems."[117] The ALJ noted that the VA Medical records reflected that Plaintiff "had intact thought processes with good pitch, volume and rate of speech" and "[h]is affect was full range and appropriate for the topic."[118] Plaintiff was diagnosed with adjustment reaction, but it was determined that inpatient admission was not appropriate.[119] Because the ALJ found that Plaintiff's medically determinable mental impairment caused no more than mild limitation in any of the first three functional areas and no episodes of decompensation for an extended duration, the ALJ concluded that the impairment was not severe.[120]

---

[113] *Id.* at 14.

[114] *Id.*

[115] *Id.*

[116] *Id.*

[117] *Id.*

[118] *Id.*

[119] *Id.* at 14–15.

[120] *Id.* at 15.

Plaintiff asserts that the opinions of his treating psychiatrist, John Kevin Jackson, M.D., and treating psychologist, James T. Russell, Ph.D., support the conclusion that his mental impairments were severe.[121] However, the medical records indicate that Drs. Jackson and Russell routinely found that, although Plaintiff had some symptoms of depression and anxiety, his mental status indicators were within normal limits or had minimal deficits.[122] Plaintiff relies on a letter written by Dr. Jackson on February 18, 2014, which states that Plaintiff would find it "very difficult . . . to properly interact with others in a work situation.[123] However, the medical records completed by Dr. Jackson on February 18, 2014, indicate that Plaintiff reported that his medications helped with his anxiety, he had no psychomotor agitation or depression, his mood was "iffy," his affect was "full," and his judgment and insight were "fair."[124] Furthermore, when Plaintiff was hospitalized at Tulane Medical Center from April 3 through April 9, 2014, for cardiac testing, his treating physicians noted that he could have diazepam if he needed it for his anxiety and adjustment disorders, but that it was a "non-issue" and "[h]e required no medication for [his anxiety] during th[e] hospitalization."[125]

The Fifth Circuit has held that "conflicts of evidence are for the Commissioner, not the courts, to resolve."[126] Although there are instances in the medical records that show Plaintiff was

---

[121] Rec. Doc. 24 at 3, n.1.

[122] Adm. Rec. at 523–25, 549–53, 585–86, 616–18, 626–30, 634–36, 645–47.

[123] Adm. Rec. at 327.

[124] Adm. Rec. at 616–18.

[125] Adm. Rec. at 346, 350.

[126] *Byrd v. Comm'r of Social Sec.*, 368 F. App'x 542, 543 (5th Cir. 2010) (quoting *Perez v. Barnhart*, 415 F.3d 457, 461 (5th Cir. 2005)).

reporting ongoing symptoms and that Plaintiff would find it difficult to interact in a work situation,[127] the medical evidence supports the ALJ's conclusion that Plaintiff's mental impairment caused no more than mild limitation in any of the first three functional areas and no episodes of decompensation for an extended duration.[128] Plaintiff argues that the ALJ should have reached the opposite conclusion in evaluating his medical records, but he does not point to any evidence that the ALJ failed to evaluate. This Court cannot reweigh the evidence in the record or substitute its judgment for the ALJ's.[129] Accordingly, the Court concludes that the ALJ's decision that Plaintiff's mental impairments were not severe was based on substantial evidence.

### 3. Obstructive Sleep Apnea

Plaintiff also objects to the Magistrate Judge's determination that substantial evidence supported the ALJ's finding that Plaintiff's obstructive sleep apnea was not a severe impairment.[130] Accordingly, the Court reviews this issue *de novo*.

Plaintiff was diagnosed with mild sleep apnea during a sleep study at Tulane Medical Center on April 9, 2014, and he received a CPAP machine on April 18, 2014.[131] On July 23, 2014, he was seen in follow-up and he reported using the machine only 48 percent of the time and using it for more than 4 hours per day only 6 percent of the time.[132] On August 11, 2014, Plaintiff

---

[127] Adm. Rec. at 523–25, 549–53, 585–86, 616–18, 626–30, 634–36, 645–47.

[128] *Id.*

[129] *Newton*, 209 F.3d at 452.

[130] Rec. Doc. 24 at 2.

[131] Adm. Rec. at 346, 392, 557.

[132] *Id.* at 533.

reported that he continued to experience some sleep problems, used the CPAP machine "most nights," but fell asleep without it some nights.[133] On August 13, 2014, Dr. Jackson prescribed Plaintiff doxepin as needed for sleep.[134]

The Fifth Circuit has recognized that a Plaintiff's failure to seek treatment or comply with prescribed treatment is a relevant factor to consider in determining the severity of an alleged impairment.[135] The medical evidence indicates that Plaintiff was not fully complying with his sleep apnea treatment plan. Furthermore, Plaintiff does not cite any evidence of functional limitations caused by his sleep apnea. Accordingly, the Court concludes that the ALJ's decision that Plaintiff's sleep apnea not severe was based on substantial evidence.

### 4.    Hypertension

The Magistrate Judge found that Plaintiff abandoned his argument that his hypertension was a severe impairment because he did not provide any briefing on the issue.[136] In his objections to the Magistrate Judge's recommendation, Plaintiff again lists hypertension as a severe impairment.[137] However, Plaintiff again fails to provide any briefing on this issue.

The ALJ noted that during his hospitalization on April 7, 2014, Plaintiff "was noted to be slightly hypertensive and was taking Losartan, but given the syncope and only mild hypertension,

---

[133] *Id.* at 528.

[134] *Id.* at 525.

[135] *Doss v. Barnhart*, 137 F. App'x 689, 690 (5th Cir. 2005) (citing *Villa v. Sullivan*, 895 F.2d 1019, 1024 (5th Cir.1990)).

[136] Rec. Doc. 23 at 2, n.1.

[137] Rec. Doc. 24 at 2.

the medication was held until discharge."[138] The medical evidence is consistent with the ALJ's description.[139] Furthermore, the medical evidence indicates that Plaintiff's hypertension was well-controlled when he took his blood pressure medication.[140] Plaintiff does not cite any evidence of functional limitations caused by his hypertension. Accordingly, the Court concludes that the ALJ's decision that Plaintiff's hypertension was not severe was based on substantial evidence.

**B.** ***Whether the ALJ Erred in Considering the Combined Effects of Plaintiff's Impairments***

The Magistrate Judge rejected Plaintiff's contention that the ALJ failed to consider the combined effects of Plaintiff's impairments, reasoning that Plaintiff's list of subjective complaints and diagnoses did not establish any combined effects that the ALJ failed to address.[141] Plaintiff objects to this determination, arguing that the ALJ's finding that Plaintiff's impairments were severe is relevant and prejudicial to proper consideration of how the combined effects of his multiple impairments diminished his RFC.[142] Specifically, Plaintiff argues that a finding that these impairments are severe "should have forced the ALJ to put proper focus on how these additional impairments combined with others to negatively affect residual functional capacity."[143] Accordingly, the Court reviews this issue *de novo.*

---

[138] Adm. Rec. at 17.

[139] *Id.* at 346.

[140] *Id.* at 538, 613, 622, 630.

[141] Rec. Doc. 23 at 22.

[142] Rec. Doc. 24 at 5.

[143] *Id.* at 6.

As the Fifth Circuit has recognized, "[i]n determining whether a claimant's physical or mental impairments are of a sufficient medical severity as could be the basis of eligibility under the law, the ALJ is required to consider the combined effects of all impairments without regard to whether any such impairment, if considered separately, would be of sufficient severity."[144] However, the mere diagnosis of and treatment for an impairment does not establish disability.[145] Plaintiff "'must show that [he] was so functionally impaired [by his diagnosed impairments] that [he] was precluded from engaging in any substantial gainful activity.'"[146]

Plaintiff argues that he was restricted from driving, which he contends alone should have been considered a severe restriction on his ability to sustain employment as a probation officer.[147] However, the ALJ considered the fact that Plaintiff was unable to drive,[148] and Plaintiff has not shown that the ability to drive would be required for him to perform his prior work. Plaintiff also contends that the ALJ failed to consider evidence of prescription medicines.[149] However, the ALJ did consider Plaintiff's testimony that his medications caused sleepiness, and the ALJ thoroughly summarized the medical evidence and discussed the prescriptions Plaintiff was taking for his

---

[144] *Loza*, 219 F.3d at 393 (citations omitted).

[145] *Bordelon v. Astrue*, 281 F. App'x 418, 422 (5th Cir. 2008) (citing *Hames v. Heckler*, 707 F.2d 162, 165 (5th Cir. 1983)).

[146] *Id.*

[147] Rec. Doc. 24 at 6.

[148] Adm. Rec. at 16.

[149] Rec. Doc. 24 at 7.

medical conditions.[150] Therefore, Plaintiff has not shown that the ALJ failed to properly consider the combined effects of his impairments.

## C.    *Whether the ALJ Erred in Determining the Weight to Accord to the Opinions of Plaintiff's Treating Physicians*

The Magistrate Judge rejected Plaintiff's argument that the ALJ failed to follow proper legal standards in determining how much weight to give to the opinions of his treating psychiatrist.[151] Plaintiff objects, arguing that the ALJ erred in giving so much weight to the opinion of the consultative psychologist, Dr. Durdin.[152] Plaintiff notes that he received treatment from Drs. Jackson and Russell for several years, and they were consistent in their diagnosis of adjustment disorder.[153] Therefore, Plaintiff contends that the ALJ erred in choosing "to essentially ignore the reports and conclusions of Dr. Jackson."[154] Accordingly, the Court reviews this issue *de novo*.

20 C.F.R. § 404.1527(c)(2) provides that the opinions of treating sources are generally given more weight "since these sources are likely to be the medical professionals most able to provide a detailed, longitudinal picture of your medical impairment(s) and may bring a unique perspective to the medical evidence that cannot be obtained from the objective medical findings alone or from reports of individual examinations. . ." Therefore, although not conclusive, an evaluation by the claimant's treating physician should be accorded great weight.[155] "A treating

---

[150] Adm. Rec. at 16.

[151] Rec. Doc. 23 at 23–25.

[152] Rec. Doc. 24 at 8.

[153] *Id*. at 8–9.

[154] *Id*. at 10–11.

[155] *Greenspan v. Shalala*, 38 F.3d 232, 237 (5th Cir. 1994).

physician's opinion on the nature and severity of a patient's impairment will be given controlling weight if it is 'well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with . . . other substantial evidence.'"[156] "[T]he ALJ is free to reject the opinion of any physician when the evidence supports a contrary conclusion."[157] However, "it is clear that the ALJ must consider all the record evidence and cannot 'pick and choose' only the evidence that supports his position."[158]

As discussed above, the medical records indicate that Drs. Jackson and Russell routinely found that, although Plaintiff had some symptoms of depression and anxiety, his mental status indicators were within normal limits or had minimal deficits.[159] Plaintiff relies on a letter written by Dr. Jackson on February 18, 2014, which states that Plaintiff would find it "very difficult . . . to properly interact with others in a work situation."[160] However, the medical records completed by Dr. Jackson on February 18, 2014, indicate that Plaintiff reported that his medications helped with his anxiety, he had no psychomotor agitation or depression, his mood was "iffy," his affect was "full," and his judgment and insight were "fair."[161] Furthermore, when Plaintiff was hospitalized at Tulane Medical Center from April 3 through April 9, 2014, for cardiac testing, his treating physicians noted that he could have diazepam if he needed it for his anxiety and adjustment

---

[156] *Martinez v. Chater*, 64 F.3d 172, 176 (citing 20 C.F.R. § 404.1527(d)(2)).

[157] *Id.*; *Bradley v. Bowen*, 809 F.2d 1054, 1057 (5th Cir. 1987) (citation omitted).

[158] *Loza v. Apfel*, 219 F.3d 378, 393 (5th Cir. 2000).

[159] Adm. Rec. at 523–25, 549–53, 585–86, 616–18, 626–30, 634–36, 645–47.

[160] *Id.* at 327.

[161] *Id.* at 616–18.

disorders, but that it was a "non-issue" and "[h]e required no medication for [his anxiety] during th[e] hospitalization."[162]

The Fifth Circuit has held that "[t]he ALJ 'is entitled to determine the credibility of medical experts as well as lay witnesses and weigh their opinions accordingly.'"[163] Although there are instances in the medical records that show Plaintiff was reporting ongoing symptoms and that Plaintiff would find it difficult to interact in a work situation,[164] the ALJ considered and rejected Dr. Jackson's opinion that Plaintiff's ability to function in the work environment was severely limited.[165] Plaintiff argues that the ALJ should have reached the opposite conclusion in evaluating his medical records, but he does not point to any evidence that the ALJ failed to evaluate. This Court cannot reweigh the evidence in the record or substitute its judgment for the ALJ's.[166] Accordingly, the Court concludes that the ALJ's decision to accord less weight to the opinion of Plaintiff's treating physician is supported by substantial evidence.

### D.     Whether Substantial Evidence Supported the ALJ's Determination that Plaintiff had the RFC to Sustain Full-Time Work as a Probation Officer

Finally, the Magistrate Judge rejected Plaintiff's argument that the ALJ failed to consider all of the evidence in determining Plaintiff's RFC to sustain gainful employment.[167] Plaintiff

---

[162] Adm. Rec. at 346, 350.

[163] *Ramirez v. Colvin*, 606 F. App'x 775, 779 (5th Cir. 2015) (quoting *Scott v. Heckler*, 770 F.2d 482, 485 (5th Cir. 1985)).

[164] Adm. Rec. at 523–25, 549–53, 585–86, 616–18, 626–30, 634–36, 645–47.

[165] *Id.* at 19.

[166] *Newton*, 209 F.3d at 452.

[167] Rec. Doc. 23 at 25.

objects, arguing that there is not substantial evidence to support the ALJ's determination that he has the RFC to sustain full-time work as a probation officer.[168] Plaintiff notes that the vocational expert only testified as to the physical requirements of work as a probation officer, saying nothing about the emotional or psychological weight of the job.[169] Accordingly, the Court reviews this issue *de novo.*

As discussed *supra,* the ALJ's determination that Plaintiff's mental health conditions were not severe is based on substantial evidence. The ALJ determined that Plaintiff's medically determinable impairments could reasonably be expected to cause some of the symptoms alleged by Plaintiff, but found that Plaintiff's statements concerning the intensity, persistence and limiting effects of his symptoms were not entirely credible.[170] Therefore, the ALJ concluded that Plaintiff was capable of performing his past relevant work as a probation officer.[171] "An ALJ has discretion to judge a claimant's credibility and must evaluate subjective complaints in light of the objective medical evidence on record."[172] Credibility determinations are generally entitled to great deference.[173] The ALJ's credibility finding was supported by substantial evidence. Accordingly, the Court concludes that substantial evidence supported the ALJ's determination that Plaintiff had the RFC to sustain full-time work as a probation officer.

---

[168] Rec. Doc. 24 at 10.

[169] *Id.* at 11.

[170] Adm. Rec. at 18.

[171] *Id.* at 19.

[172] *Foster v. Astrue,* 277 F. App'x 462, 465 (5th Cir. 2008) (citing *Johnson v. Heckler,* 767 F.2d 180, 182 (5th Cir. 1985)).

[173] *Newton v. Apfel,* 209 F.3d 448, 459 (5th Cir. 2000).

### V. Conclusion

For the foregoing reasons, the Court finds that the ALJ's decision denying Plaintiff's application for DBI and SSI was based on substantial evidence. Accordingly,

**IT IS HEREBY ORDERED** that the Court **OVERRULES** Plaintiff's objections, and **ADOPTS** the Magistrate Judge's recommendation;

**IT IS FURTHER ORDERED** that the ALJ's decision denying James Conley's claim for Disability Insurance Benefits and Supplemental Security Income Benefits is **AFFIRMED.**

**NEW ORLEANS, LOUISIANA,** this ___9th___ day of August, 2017.

**NANNETTE JOLIVETTE BROWN**
**UNITED STATES DISTRICT JUDGE**